EASTERN EXTENSION, AUSTRALASIA AND CHINA TELEGRAPH COMPANY, LIMITED, *v.* UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 419. Argued October 22, 1913.—Decided December 1, 1913.

While the act of March 3, 1887, c. 359, 24 Stat. 505, broadened the general jurisdiction of the Court of Claims, it was not repugnant to, or inconsistent with, the limitations of § 1066, Rev. Stat., expressly excluding from such jurisdiction all claims growing out of treaty stipulations, and it did not, therefore, repeal that section.

Claims based on treaty stipulations within § 1066, Rev. Stat., include those which arise solely as the result of cession of territory to the United States.

The policy and spirit of a statute should be considered in construing it as well as the letter.

Although the Court of Claims has not jurisdiction of claims against the United States based on treaty stipulations, it has jurisdiction of claims based on contracts originally made with the former sovereign of ceded territory and assumed by the United States after the cession either expressly or by implication.

Where the court below declined to take jurisdiction and the appeal is solely on that question, this court will not express any opinion on the merits as they are not before it.

48 Ct. Cl. 33, reversed.

THE facts, which involve the jurisdiction of the Court of Claims, are stated in the opinion.

*Mr. Louis Marshall* for appellant.

*Mr. Assistant Attorney General Thompson,* with whom *Mr. William F. Norris* was on the brief, for the United States.

MR. JUSTICE HUGHES delivered the opinion of the court.

This is an appeal from a judgment of the Court of Claims which dismissed, upon demurrer, the petition of the claimant for the want of jurisdiction. 48 C. Cls. 33.

The petition averred that the claimant, a British corporation, secured from the Government of Spain, in the year 1879, a concession for the construction and operation of a submarine telegraph cable between the island of Luzon and Hong Kong, with an exclusive privilege for forty years, under which it maintained a cable from Hong Kong to Bolinao; and that in 1897, the Government of Spain granted a further concession for three submarine telegraph cables to provide communication between the Islands of Luzon, Panay, Negros and Zebu, in the Philippine archipelago. Among the conditions of the last-mentioned grant, a copy of which is annexed to the petition and made a part of it, are the following:

"Article 9. The Concessionaire undertakes to work, at his own expense and risk, the Cables of this Concession for a period of twenty years, the said term to begin from the date of the taking over of. the Cables and their adjuncts in perfect working order.

"Article 10. The Concessionaire shall enjoy an annual subsidy of £4,500 (four thousand five hundred pounds sterling), payable monthly in twelve instalments, during the whole term of the working of the Cables, the said payments being made at Manila by the Chief Treasury Office of those Islands.

"Article 16. The Company holding the Concession shall pay the State the ten per cent. which tax in its application to cablegrams is fixed after first deducting the amount of the expenses for the maintenance of the Stations, calculated at £6,000 (six thousand pounds sterling) per annum, the said expenses not to exceed the amount specified.

"Article 17. It shall be obligatory to transmit official despatches, which shall enjoy precedence, at half the rates charged for those of a private character. . . . ."

In March, 1898, the claimant obtained an additional concession from the Government of Spain for a submarine telegraph cable between Hong Kong and Manila which was completed in the following month.

It was further alleged that the claimant had "actually fulfilled" and continued "to fulfill" all of the conditions of the concessions and "to perform all of the duties imposed upon it" by their terms. After setting forth the making of the Treaty of Paris, and the cession thereby to the United States of the Philippine Islands, the petition continued:

"Thereupon the United States of America entered into the occupancy of said Philippine Islands, and proceeded to exercise sovereignty over said Islands and of the inhabitants thereof, and to assume jurisdiction and control

over all property and property rights in and upon said Philippine Islands, including the several lines of submarine cable and telegraph land lines established, constructed and operated by the Claimant, and availed itself of all of the benefits and advantages thereof, using the said lines of cable and telegraph for its governmental and other purposes, which it has continued to do ever since and still continues to do, and it has become in all respects the successor of the Government of Spain to all rights, privileges and advantages conferred upon and secured and reserved to the Government of Spain under the terms of the aforesaid concessions. . . .

"By reason of the premises the United States of America assumed all of the obligations and the performance of all of the conditions accepted by the Government of Spain and agreed to by it according to the terms of the aforesaid concessions . . . and of each of them, and agreed with the Claimant to perform the covenants and agreements, and to fulfill the conditions, set forth in said several concessions and accepted and agreed to by the Government of Spain.

"The United States of America has failed to perform said agreements and to fulfill the said conditions, in that it has failed and refused to pay to the Claimant the annual subsidy of £4,500 sterling as required by the terms of Article 10 of the aforesaid concession . . . for the years 1905, 1906, 1907, 1908 and 1909, and for each of said years, and by reason of such failure and refusal to pay it has become indebted to the Claimant in the sum of £4,500 sterling for each of said years, with interest on each of said annual instalments at the rate of six per cent per annum from the 31st day of December of the year in which the same became payable."

And judgment was demanded accordingly for the sum of $109,462.50, with interest as stated.

The Government demurred to the petition asserting

(1) that it did not set forth facts sufficient to constitute a cause of action against the United States and (2) that it did not disclose a cause of action within the jurisdiction of the court.

Upon hearing, the court held that it was without jurisdiction and it was upon this ground that the petition was dismissed.　48 C. Cls. 33.

The act of February 24, 1855, c. 122 (10 Stat. 612), creating the Court of Claims, provided that it should hear and determine all claims "founded upon any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the government of the United States," and also all claims which might be "referred to said court by either house of Congress." It required the court to report to Congress the cases upon which it had finally acted, stating the material facts found with its opinion, and to prepare such bills as would be appropriate, if enacted, to carry its decisions into effect. Important amendments were made by the act of March 3, 1863, c. 92, 12 Stat. 765, which gave jurisdiction of set-offs and counter-claims, authorized appeals to the Supreme Court and provided for payment of final judgments out of any general appropriation made by law for the satisfaction of private claims.[1] But at the same time Congress was careful to exclude from the jurisdiction of the court such claims as arose out of treaty stipulations. (*id.* § 9; 12 Stat. 767). As was said in *Ex parte Atocha,* 17 Wall. 439, 444: "All the cases of which the court could subsequently take cognizance, by either the original or amendatory act, were cases arising out of contracts or transactions between the government or its officers and claimants;　.　.　. Those acts have since then applied only to claims made directly against

---

[1] Cf. Act of March 17, 1866, c. 19, 14 Stat. 9; *United States* v. *Alire,* 6 Wall. 573, 576.

the United States, and for the payment of which they were primarily liable, if liable at all, and not to claims against other governments, the payment of which the United States had assumed or might assume by treaty."

The provisions of the act of 1855, as amended, relating to jurisdiction were placed in § 1059 of the Revised Statutes; and § 9 of the act of 1863 became § 1066 of the revision, as follows:

"SEC. 1066. The jurisdiction of the said court shall not extend to any claim against the Government not pending therein on December one, eighteen hundred and sixty-two, growing out of or dependent on any treaty stipulation entered into with foreign nations or with the Indian tribes."

By the act of March 3, 1887, c. 359 (24 Stat. 505), the general jurisdiction of the court theretofore defined by § 1059 was broadened, and it was thus provided:

"That the Court of Claims shall have jurisdiction to hear and determine the following matters:

"First. All claims founded upon the Constitution of the United States or any law of Congress, except for pensions, or upon any regulation of an Executive Department, or upon any contract, expressed or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity, or admiralty if the United States were suable: *Provided, however,* That nothing in this section shall be construed as giving to either of the courts herein mentioned, jurisdiction to hear and determine claims growing out of the late civil war, and commonly known as 'war claims,' or to hear and determine other claims, which have heretofore been rejected, or reported on adversely by any court, Department, or commission authorized to hear and determine the same.

"Second. All set-offs, counter-claims, claims for damages, whether liquidated or unliquidated, or other demands whatsoever on the part of the Government of the United States against any claimant against the Government in said court."

The statute of 1887 repealed all inconsistent enactments. The question whether § 1066 was thus repealed has been raised but not decided. *United States* v. *Weld*, 127 U. S. 51, 57; *Juragua Iron Company, Limited*, v. *United States*, 212 U. S. 297, 310. Both the provisions above quoted and those of § 1066 are incorporated in the Judicial Code (§§ 145, 153). It is argued that the act of 1887 was intended to provide a complete scheme for the bestowal of jurisdiction over all claims against the Government, save those therein expressly excepted, and that, hence, it must be regarded as a substitute for the provisions of the Revised Statutes including § 1066 which should therefore be deemed to be repealed (*United States* v. *Tynen*, 11 Wall. 88, 92; *The Paquete Habana*, 175 U. S. 677, 684, 685). We cannot accede to this view. The question is one of legislative intent (*United States* v. *Claflin*, 97 U. S. 546, 551). The section dealt with a special class of cases. There is no essential repugnancy between the broadening of the general provisions as to jurisdiction and the maintenance of the limitation as to claims based upon treaties, and, in considering the scope and manifest purpose of the later act in relation to claims arising out of transactions between the Government, or its officers, and claimants, we find no warrant for concluding that in enlarging the jurisdiction previously conferred by § 1059 it was the intention of Congress to effect such a complete substitution as would destroy the established exception set forth in § 1066. So far, then, as the petition may be viewed as one seeking to assert a claim growing out of the treaty with Spain, we are of the opinion that it was not within the jurisdiction of the Court of Claims.

It is insisted, however, that the claim should not be treated as one dependent upon a treaty stipulation (*United States* v. *Weld,* 127 U. S. 51, 57), that the treaty merely serves to confer upon the United States the title to the Philippine Islands (December 10, 1898, 30 Stat. 1754; November 7, 1900, 31 Stat. 1942); and that the claim is based upon considerations of international law. It is pointed out that it was stated in the protocol that an article proposed for the assumption of contracts which had been entered into by the Spanish Government was rejected by the American Commissioners, while it was also set forth that it might be assumed that the United States would deal justly and equitably in respect of contracts that were binding under the principles of international law (Sen. Doc. No. 62, 55th Cong. 3d Sess., pp. 240, 241). But, if the claim of the appellant were deemed to rest exclusively upon the transfer of sovereignty, upon the theory that thereby under the principles of international law an obligation in its favor was imposed upon the United States, the claim would still, in our judgment, be excluded by the statute from the consideration of the court below. The words "treaty stipulation" should not be so narrowly interpreted as to permit the exercise of jurisdiction where the claim arises solely out of the treaty cession. Whether the liability asserted is said to result from an express provision of assumption contained in a treaty, or is sought to be enforced as a necessary consequence of the cession made by a treaty, it is equally within the policy and spirit of the statute; and the letter of the statute should not be otherwise construed. It is its evident purpose that the obligations of the United States directly resulting from a treaty should not be determined by the Court of Claims.

But the petition has another aspect. The grant to the appellant, as already stated, provided in Article 16 for a payment of a tax of ten per cent. and, under Article 17, for precedence and half rates in the transmission of official

despatches. It is argued by the appellant that the fact that the United States "has received and is receiving the special tax" and "the precedence and half rates specified" must be regarded as admitted; and it is urged that under the general principles of jurisprudence the facts set forth in the petition import an obligation on the part of the United States to the appellant to pay the subsidy provided for in the concession so long as the United States shall continue to avail itself of the rights and privileges which have accrued to it under the terms of the concession.

If the petition can be fairly said to present the claim that the United States, not simply by virtue of succession to sovereignty under the treaty of cession, but through its subsequent transactions with the appellant, and by contract to be implied from such transactions, has become indebted to the appellant, we think that the claim, as thus limited, would be within the jurisdiction of the court below under the act of 1887. It is true that the averments of the petition lack definiteness. It is not specifically alleged that the United States has received the tax or enjoyed the benefit of the half rates, nor is it precisely stated what transactions have been had between the Government and the appellant. But the petition alleges that the United States, since it entered into the occupancy of the Islands, has "availed itself of all the benefits and advantages" of the submarine cable and telegraph lines established by the appellant, "using the said lines of cable and telegraph for its governmental and other purposes, which it has continued to do ever since and still continues to do," and that "it has become in all respects the successor of the Government of Spain to all rights, privileges and advantages conferred upon and secured and reserved to the Government of Spain under the terms of the aforesaid concession." These general allegations are not altogether inapposite with respect to a claim based upon an implied contract outside of the treaty itself,

and the claimant should not be denied the right to have its claim, thus considered, adjudicated. In this view, the petition would be susceptible of amendment and its sufficiency, in law and fact, could be heard and determined.

We express no opinion upon the merits of the claim, in this aspect, as they are not before us, the court below having declined to take jurisdiction. But as we think there was jurisdiction to pass upon the claim under the limitations above stated, the judgment will be reversed and the cause remanded with instructions to the court below to take further proceedings in conformity with this opinion.

*It is so ordered.*