## DOMESTIC FUEL CORPORATION v. UNITED STATES.

### Customs Appeal No. 3849.

Court of Customs and Patent Appeals.

Jan. 7, 1935.

Curtis, Fosdick & Belknap, of New York City (James F. Curtis, of New York City, of counsel), for appellant.

Joseph R. Jackson, Asst. Atty. Gen. (Marcus Higginbotham, Jr., Sp. Atty., of New York City, of counsel), for the United States.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a judgment of the United States Customs Court, First Division, wherein the court by a majority opin-ion (Brown, J., dissenting) overruled so much of appellant's protest, No. 643579–G, as involved the importation of certain coal briquettes from Germany; said briquettes having been produced in that country. The protest claimed that the briquettes were free of duty under paragraph 1650, § 201, of the Tariff Act of 1930 (see 19 USCA § 1201, par. 1650).

The Customs Court held that the said briquettes were properly subject to the tax assessed by the collector at the rate of 10 cents per 100 pounds under the provisions of section 601 of the Revenue Act of 1932 (26 USCA §§ 3601–3629 note).

The merchandise was entered at the port of Boston, Mass., on February 27, 1933.

It appears from the record that appellant's protest also covered certain coal and coke imported in the same cargo with the said briquettes. The trial court sustained the protest in so far as it involved the coal and coke, but, as hereinbefore indicated, overruled it in so far as it concerned the said briquettes.

It also appears from the record that, upon the trial before the Customs Court, several protests were consolidated with the protest here involved for the purposes of trial, and a single decision and judgment were rendered upon all of the protests so consolidated. Also a single stipulation was entered into covering all of the protests, which stipulation, so far as is here pertinent, reads as follows:

"It is hereby stipulated by and between Charles D. Lawrence, Assistant Attorney General, attorney for the defendant, and Curtis, Fosdick & Belknap, attorneys for the several plaintiffs, that these causes may be heard together and determined by the Court upon the entry papers, protests, reports of the Collectors, and the following facts as agreed upon:

"1. Entries of merchandise produced in and exported from the countries set forth below were made by the several plaintiffs in accordance with the following particulars:

| Court Number. | Plaintiff. | Date of entry. | Article. | Country. |
|---|---|---|---|---|
| * | * | * | * | * |
| 643579–G | Domestic Fuel Corp. | Feb. 27, 1933 | Coal coke and briquettes | Germany |
| * | * | * | * | * |

"2. The merchandise covered by each of the entries listed above was assessed a tax at the rate of 10 cents per 100 pounds by the Collector of Customs at the port of entry, purporting to act under the provisions of section 601 of the Revenue Act of 1932, and the tax assessed has been paid and each of the said assessments and payments has been protested by the respective plaintiffs.

\*　\*　\*　\*　\*　\*

"4. Protests Covering Entries Made in 1933:

\*　\*　\*　\*　\*　\*

"Domestic Fuel Corporation 643579–G (coal, coke and briquettes from Germany, entered in 1933);

\*　\*　\*　\*　\*　\*

"On February 14, 1933, the Secretary of the Treasury in T. D. 46193 promulgated the following instructions addressed to Collectors of Customs and Others Concerned:

" 'Referring to its circular letter No. 941, dated January 3, 1933, the bureau informs you that coal, coke made from coal, and coal or coke briquettes imported from Canada and Mexico during the calendar year 1933 will not be subject to the tax of 10 cents per 100 pounds provided for in section 601 (c) (5) of the revenue act of 1932.

" 'Such merchandise will be subject to that tax when imported during 1933 from the following countries: Belguim, French Indo-China, Germany, Great Britain, Netherlands, Russia.

" 'Information concerning the taxable status under section 601 (c) (5) of the revenue act of coal and allied fuels imported from other countries during 1933 will be furnished upon application therefor to the bureau.'

"During the calendar year 1933 imports of coal and coke from the Dominion of Canada and of coal from the Republic of Mexico were admitted into the United States by the respective Collectors of Customs at the ports of entry free of any tax under the provisions of Section 601 of the Revenue Act of 1932, in accordance with the instructions promulgated by the Secretary of the Treasury, as above set forth. The statistics of imports and exports for the calendar year 1932, as prepared and published by the Bureau of Foreign and Domestic Commerce of the Department of Commerce of the United States, do not differentiate between coal imported or exported in its ordinary form and coal imported or exported in the form of briquettes.

\*　\*　\*　\*　\*　\*

"6. Exhibit I hereto attached is a correct summary of the statistics compiled and published by the Bureau of Foreign and Domestic Commerce of the Department of Commerce of the United States of imports into the United States and exports from the United States of coal, coke and briquettes for the calendar years 1931, 1932, and 1933. These statistics are correct with the following exceptions:

\*　\*　\*　\*　\*　\*

For the calendar year 1933:

Imports of coke from Canada
were .....................21,143 tons.

\*　\*　\*　\*　\*　\* "

Said Exhibit I shows that in 1932 the exports of coal and coke from the United States to Canada and Mexico, respectively, exceeded the imports of coal and coke from each of said countries, and that the imports of coal and coke from Germany exceeded the exports of coal and coke to Germany. Briquettes of coal or coke are not specifically mentioned in said Exhibit I.

The only oral testimony in the record material to the issues before us is that of the president of the appellant corporation, who testified that the briquettes here involved were made in Germany, from anthracite coal, with a binder of pitch.

Said section 601 of the Revenue Act of 1932 (26 USCA §§ 3601–3629 note), in so far as is here pertinent, reads as follows:

"Sec. 601. *Excise Taxes on Certain Articles*

"(a) In addition to any other tax or duty imposed by law, there shall be imposed a tax as provided in subsection (c) on every article imported into the United States unless treaty provisions of the United States otherwise provide. \* \* \*

"(c) There is hereby imposed upon the following articles \* \* \* imported into the United States, a tax at the rates hereinafter set forth, to be paid by the manufacturer, producer, or importer: \* \* \*

"(5) Coal of all sizes, grades, and classifications (except culm and duff), coke manufactured therefrom; and coal or coke briquettes, 10 cents per 100 pounds. The tax on the articles described in this paragraph shall apply only with respect to the importation of such articles, and shall not be imposed upon any such article if during the preceding calendar year the exports of the articles described in this paragraph from the United States to the country from which such article is imported have been greater in

quantity than the imports into the United States from such country of the articles described in this paragraph."

It is conceded by the government that, if the briquettes were not subject to the tax of 10 cents per 100 pounds assessed by the collector as aforesaid, they were free of duty as claimed by appellant.

At the date of the importation here in question, and since October 14, 1925, there existed between the United States and Germany a treaty (44 Stat. 2132, 2137) which, in so far as is here pertinent, reads as follows:

"Article 7. * * *

"Each of the High Contracting Parties binds itself unconditionally to impose no higher or other duties or conditions and no prohibition on the importation of any article, the growth, produce or manufacture, of the territories of the other than are or shall be imposed on the importation of any like article, the growth, produce or manufacture of any other foreign country. * * *

"Any advantage of whatsoever kind which either High Contracting Party may extend to any article, the growth, produce, or manufacture of any other foreign country shall simultaneously and unconditionally, without request and without compensation, be extended to the like article the growth, produce or manufacture of the other High Contracting Party. * * *

"With respect to the amount and collection of duties on imports and exports of every kind, each of the two High Contracting Parties binds itself to give to the nationals, vessels and goods of the other the advantage of every favor, privilege or immunity which it shall have accorded to the nationals, vessels and goods of a third State, and regardless of whether such favored State shall have been accorded such treatment gratuitously or in return for reciprocal compensatory treatment. Every such favor, privilege or immunity which shall hereafter be granted the nationals, vessels or goods of a third State shall simultaneously and unconditionally, without request and without compensation, be extended to the other High Contracting Party, for the benefit of itself, its nationals and vessels."

In the case of United States v. Domestic Fuel Corporation et al., 71 F.(2d) 424, 21 C. C. P. A. (Customs) 600, T. D. 47010, there was involved, in part, the importation by the appellant here of coal from Germany in the year 1932. In that case the collector assessed such coal with a tax at the rate provided by said section 601 of the Revenue Act of 1932. The protest of the importer claimed that the coal was free of tax under the foregoing treaty and free of duty under the provisions of paragraph 1650 of the Tariff Act of 1930. In that case it was established that during the year 1932 coal had been imported tax free into the United States from Canada and Mexico. The situation with respect to favorable balances of trade between the United States and Canada, Mexico, and Germany was the same in 1931 as it was in 1932.

We there held, quoting from the syllabus:

"(a) The Revenue Act of 1932 not only did not, directly or by implication, repeal or abrogate the treaty provisions, but, by use of the phrase 'unless treaty provisions * * * otherwise provide,' expressly recognized the same as a part of 'the law of the land.'

"(b) Both the statutes and the treaties being parts of the law of the land, they must be construed together.

"(c) So construing them the imposition of the duties complained of was in contravention of law, in both instances, and the protests were properly sustained by the United States Customs Court."

The questions decided in that case are accepted by the parties hereto as stare decisis in the case at bar, and the only questions raised by this appeal are, we think, correctly stated in the brief of the government as follows:

"(A) Are briquettes made of coal with a binder of pitch, produced in Germany and imported into the United States on February 27, 1933, dutiable at 10 cents per 100 pounds under the provisions of the Revenue Law, supra, as found by the lower court, or are such briquettes entitled to free entry by virtue of the provisions of said Revenue Act?

"(B) Is the dutiable status of any article described in the Revenue Law, supra, dependent upon the balance of trade in each individual article described, together with the admission free of duty of such article from Canada or Mexico, as held by the lower court; or, is the dutiable status of any article provided in the Revenue Act, supra, to be determined by the balance of trade in all the said articles collectively from any country?

"(C) In view of the fact that the record does not show that any briquettes were admitted to free entry into the United States

from any country during the year 1933, are such briquettes imported into the United States from ·Germany during the year 1933 entitled to free entry or dutiable at 10 cents per 100 pounds?" •

Of course, the answer to question (A) in the foregoing quotation depends upon the· answers to questions (B) and (C).

It is clear that, if the proper construction of said section 601 (c) (5) of the Revenue Act of 1932 is that the balance of trade must be determined with respect to coal briquettes alone, without regard to the balance of trade with respect to coal and coke, then the judgment of the trial court should be affirmed, for there is nothing in the record regarding imports and exports of coal briquettes separately.

It will be observed that said section 601 (c) (5) provides that the tax therein provided for shall not be imposed "upon any such *article* if during the preceding calendar year the exports of the *articles* described in this paragraph from the United States to the country from which such *article* is imported have been greater in quantity than the imports into the United States from such country of the *articles* described in this paragraph." (Italics ours.) Counsel for appellant in their brief, discussing the construction of the foregoing quoted language, state as follows: "The careful use of the singular and plural of the word 'article' in this sentence we believe proves conclusively that the Congress had in mind the ascertainment of but one balance of trade, i. e., in all the articles described in the paragraph (coal, coke and briquettes), and when that balance of trade was ascertained to be favorable to the United States, then to grant the exemption from tax to each individual *article* described in the paragraph upon its importation from the country in question. In the two places where the word 'article' in the singular is used, the language relates to a particular article being imported and to the country from which such particular article is imported; whereas, when the word 'articles' is used in the plural in the places where italicized the language relates to the quantity of the exports and imports of all the articles described. in the paragraph."

We agree with this statement, and it is plain to us that the natural construction of section 601 (c) (5) is that the applicability of the tax therein provided to an *imported article* therein mentioned is to be determined from the balance of trade with respect to *all*

*the articles* described in the paragraph, *or so many thereof,* considered together, as were the subject of commerce, during the preceding calendar year, between the United States and the country from which such article was exported to the United States.

Counsel for the government, in their brief and upon oral argument, impliedly concede that the literal construction of said section 601 (c) (5) is that contended for by appellant, but invoke the rule that the singular may be read as including the plural and the plural as though written in the singular if the context warrants. This rule is, of course, well established, but we fail to see its application to the case at bar. We find nothing in the context of section 601 (c) (5) calling for the application of this rule. On the contrary, we think Congress intended that the· tax upon any article therein named should be determined with respect to the balance of trade in all of the articles there named, as hereinbefore defined. Had Congress intended any other construction, we do not think the plural of the word "article" would have been used, and Congress would have provided that the tax upon any article should be determined with respect to the balance of trade in such article.

Therefore it was only necessary for appellant to establish that the balance of trade, as hereinbefore defined, between the United States and Canada, or between the United States and Mexico, was favorable to the United States, in order to form a basis for invoking the treaty provisions hereinbefore referred to.

It is true that there is no direct testimony in the record respecting the exports and imports of coal briquettes to and from Canada and Mexico, and it might be contended that, for aught the record shows, the imports of such briquettes from Canada and Mexico might have been of sufficient amount to shift the balance of trade between each of said countries and the United States when coal, coke, and briquettes were considered together.

We think the correct answer to such a contention is that, if such had been the case, Exhibit I, published by the Bureau of Foreign and Domestic Commerce, would have so indicated. We think the fair inference from said exhibit is that, either there was no commerce in briquettes between the United-- · ed States and Canada or Mexico, or, if there was such commerce, it was included in the statistics of exports and imports of coal and coke. This conclusion is fortified by the in-

struction promulgated by the Secretary of the Treasury to collectors of customs that, during the calendar year 1933, coal briquettes imported from Canada and Mexico would not be subject to the tax of 10 cents per 100 pounds provided for by said section 601 of the Revenue Act of 1932.

The trial court in its decision, among other things, stated: "There is nothing in the record to indicate whether importations of briquettes from any country during the year 1933 were admitted to entry free from the imposition of the tax provided for in section 601 (c) (5), nor is there any evidence upon which the balance of trade for 1932 in such articles between the United States and Germany may be determined, and the claim made in protest 643579–G that briquettes imported from Germany during the year 1933 be admitted to entry free from the imposition of the 10 cents per 100 pounds' tax is overruled."

As we understand the above quotation, the majority of the trial court was of the opinion that (1) separate balances of trade must be established with respect to each article named in said section 601 (c) (5) as a basis for invoking the treaty provisions between the United States and Germany, and (2) that said treaty provisions might not be invoked in the case at bar unless it was shown that briquettes were actually imported from Canada or Mexico free of duty during the calendar year 1933.

We have hereinbefore expressed our views with respect to the construction of section 601 (c) (5) upon the question of balance of trade. There remains for consideration the question of whether there must have been actual imports of briquettes from Canada or Mexico free of duty before appellant could properly invoke the treaty provisions hereinbefore referred to.

This question, although raised and argued in appellant's brief, was not discussed in the brief of the government, or upon oral argument, from which we assume that government counsel do not take issue with the construction of appellant's counsel that it is the privilege extended by the terms of the statute, granting free entry to briquettes from Canada and Mexico, that requires the extension of a similar privilege to briquettes from Germany under the terms of the treaty with that country. We repeat one of the provisions of the treaty with Germany, reading as follows: "Any advantage of whatsoever kind which either High Contracting Party may extend to any article, the growth, produce, or manufacture of any other foreign country shall simultaneously and unconditionally, without request and without compensation, be extended to the like article the growth, produce, or manufacture of the other High Contracting Party." Article 7, 44 Stat. 2137.

Under this language it is clear to us that actual tax-free imports of briquettes from Canada or Mexico were not necessary in order to enable appellant to invoke the application of the German treaty. Not only did section 601 (c) (5) extend the privilege to countries coming within its provisions, but, pursuant to its provisions, the Secretary of the Treasury promulgated instructions to collectors of customs that coal briquettes imported from Canada and Mexico during the calendar year 1933 should not be subject to the tax imposed by section 601 (c) (5).

Therefore, at the time of the importation of the briquettes here involved, an advantage had been extended by the United States to coal briquettes, "the growth, produce, or manufacture" of Canada and of Mexico, and therefore, under the terms of said German treaty, such advantage was "simultaneously and unconditionally, without request and without compensation," extended to "the like article the growth, produce, or manufacture" of Germany.

For the reasons stated herein, we hold that the briquettes here involved were not subject to the tax imposed by said section 601 (c) (5) of the Revenue Act of 1932 (26 USCA §§ 3601–3629 note), but should have been admitted free of duty under paragraph 1650 of the Tariff Act of 1930 (see 19 USCA § 1201, par. 1650).

The judgment of the United States Customs Court is reversed to the extent that it overruled appellant's protest in so far as it related to the briquettes here involved, and the cause is remanded for further proceedings consistent with the views herein expressed.

Reversed and remanded.