GEORGE E. WARREN CORPORATION
v. UNITED STATES.

No. 150.

Circuit Court of Appeals, Second Circuit.

Feb. 7, 1938.

Curtis & Belknap, of New York City (James F. Curtis, of New York City, of counsel), for appellant.

Lamar Hardy, U. S. Atty., of New York City (Edward H. Horton, Sp. Asst. to Atty. Gen., and William F. Young, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

During the years 1933 and 1934 the George E. Warren Corporation, a Massachusetts corporation doing business in New York, imported into the United States coal

and coke from Great Britain and Germany. Acting under instructions from the Secretary of the Treasury, who purported to act in accordance with section 601 of the Revenue Act of 1932, 47 Stat. 259, 26 U.S.C. A. § 1420 et seq., note, the collectors of customs at the ports of entry assessed taxes upon said imports, which the Warren Corporation paid under protest; and said taxes were covered into the Treasury of the United States. In certain test cases conducted by the Warren Corporation and other importers it was determined that the taxes were illegally assessed and collected. United States v. Domestic Fuel Corporation, Cust. & Pat.App., 71 F.2d 424. Following this decision, the collectors of customs refunded to the Warren Corporation the principal amount of such taxes, but without interest, the allowance of interest on such refunds being expressly forbidden by section 621 (c) of the act, 47 Stat. 268, 26 U.S.C.A. § 1420 et seq. note. Thereafter several suits were brought against the United States in the District Court as a court of claims, 28 U.S.C.A. § 41(20), to recover the damages alleged to have been sustained by the Warren Corporation by reason of having been deprived of the use of its moneys between the dates of payment and of refund of said taxes, and by reason of having been obliged to incur costs and attorneys' fees in litigating in the Customs Court and the Court of Customs and Patent Appeals its claims for refund. The theory of the actions is that the illegal assessment and collection of said import taxes violated treaty rights contained respectively in the most-favored-nation clause of the Anglo-American Treaty of July 3, 1815, 8 Stat. 228, and the Treaty of the United States with Germany of October 14, 1925, 44 Stat. 2132, 2137, and that these provisions confer rights on the petitioner, a Massachusetts corporation, which may be enforced in the courts of the United States. After a motion to dismiss for lack of jurisdiction had been overruled, the defendant moved in each case to dismiss the petition for failure to state facts sufficient to constitute a cause of action. This motion was granted. The present appeal brings up two test cases, one involving importations from Great Britain, the other importations from Germany. The allegations of the petitions set forth the foregoing facts with substantial identity, except that one petition charges violation of the treaty with Great Britain, the other violation of the treaty with Germany.

This is a most extraordinary case; concededly one of first impression. The petitioner has pursued the statutory remedy accorded to importers for recovery of illegally collected import duties and has obtained the full measure of redress which that remedy gives; namely, repayment of the sums collected. In the normal case of erroneous collection of duties, that remedy is the exclusive remedy. Riccomini v. United States, 9 Cir., 69 F.2d 480. But the appellant contends that in the present case it is not, because a treaty was involved. The theory is that the appellant may invoke as violations of the treaties with Great Britain and with Germany, respectively, the acts of the Treasury Department in collecting said import taxes, and may recover from the United States by suit in the District Court as damages resulting from such violations interest on the taxes refunded during the time they were withheld, and the expenses and attorneys' fees incurred in the litigation necessary to obtain the refunds.

At the outset of the discussion it may be noted that there was no legislative violation of the treaties by the enactment of the Revenue Act of 1932, under section 601(c) (5), 26 U.S.C.A. § 1420 et seq. note, of which the taxes collected from the petitioner were assumed to have been imposed. Section 601(a), 26 U.S.C.A. § 1420 et seq. note, expressly provides that the tax shall be imposed "unless treaty provisions of the United States otherwise provide." Since coal was being admitted from Canada and Mexico duty free because of the balance of trade provision in section 601(c) (5), it would be discriminatory and violative of the most-favored-nation clause in the treaties to tax coal imported from Great Britain and Germany; hence, in view of the above-quoted clause of section 601(a), the statute was construed not to impose the tax. That is what the test cases decided. United States v. Domestic Fuel Corporation, Cust. & Pat. App., 71 F.2d 424; Domestic Fuel Corporation v. United States, Cust. & Pat. App., 74 F.2d 769. In other words, the import taxes were collected from the petitioner without warrant of law. It is at least questionable whether a treaty which promises most-favored-nation treatment to the contracting sovereign is broken by the act of an administrative official performed without warrant of law. In Taylor v. Morton, 23 Fed.Cas. 784, at page 787, No. 13,799, Justice Curtis said:

"The truth is, that this clause in the treaty is merely a contract, addressing itself to the legislative power. * * * The contract is to legislate in conformity with a rule therein given. This necessarily addresses itself, exclusively, to the legislative power. It is a rule of their action, and not of the action of courts of justice."

█ This case has been frequently cited with approval. Head Money Cases, 112 U.S. 580, 598, 5 S.Ct. 247, 28 L.Ed. 798; Whitney v. Robertson, 124 U.S. 190, 194, 8 S. Ct. 456, 31 L.Ed. 386; Rainey v. United States, 232 U.S. 310, 316, 34 S.Ct. 429, 58 L.Ed. 617. Furthermore, as those cases show, if there were any legislative violation of the treaties by the enactment of the statute, that enactment being subsequent to the treaties would prevail over them in establishing the law for the courts of this country. But we need not, and do not, rest decision on the ground that the treaties were not broken.

█ We shall assume arguendo that the Secretary of the Treasury violated them when he collected the import taxes, and that Great Britain and Germany could, respectively, demand redress from the United States. Even so, it is difficult to find any ground on which they could demand money damages such as the petitioner seeks. Their nationals did not pay the duties nor incur the expenses of the litigation. At most the foreign country could only claim that, while the question remained undecided, its nationals' market was lessened; but that has no relation to the damages claimed by the petitioner, a corporation organized under the laws of Massachusetts. It is hard to believe that the treaties were made for its benefit; and we cannot see what standing the petitioner has to complain of their breach. Compare Rainey v. United States, 232 U.S. 310, 316, 34 S.Ct. 429, 431, 58 L.Ed. 617, where the court said: "The defendant does not claim to be a British subject, and it is by no means clear that he is entitled to invoke the protection of the treaty." But this point also we may pass without decision. The fundamental difficulty with the petitioner's suit is that it seeks to submit to judicial decision questions which are not justiciable but pertain to the executive branch of the government. It is not for a court to say whether a treaty has been broken or what remedy shall be given; this is a matter of international concern, which the two sovereign states must determine by diplomatic exchanges, or by such other means as enables one state to force upon another the obligations of a treaty. Whitney v. Robertson, 124 U. S. 190, 194, 195, 8 S.Ct. 456, 31 L.Ed. 386; Botiller v. Dominguez, 130 U.S. 238, 247, 9 S.Ct. 525, 32 L.Ed. 926. It is true that this doctrine has been advanced in cases involving conflicts between treaties and statutes; but no reason is apparent why the same considerations should not be applicable when the question is whether an executive officer of one of the contracting states has denied rights secured by treaty to the other. These are matters concerning the relations between the two nations and their adjustment must be left to the field of diplomacy. Obviously, it would not do for the courts to declare that an act is a breach of a treaty and results in this or that remedy. The remedy accorded might not content the foreign power or might bring about a conflict between the executive and judicial branches of our own government.

█ These general considerations emphatically suggest that the District Court was without jurisdiction to entertain the suits at bar. When we turn to the legislative history of section 41(20) of title 28 of the U. S. Code Annotated, that conclusion becomes irresistible. This section declares that the District Court shall have original jurisdiction "Concurrent with the Court of Claims, of all claims not exceeding $10,000 founded upon * * * any contract, express or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect to which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable." The Act of February 24, 1855, 10 Stat. 612 created the Court of Claims and provided that it should hear and determine all claims founded upon "any contract, express or implied, with the government of the United States." Section 1. By section 9 of the Act of March 3, 1863, 12 Stat. 765, 767, 28 U.S.C.A. § 259 and note, it was enacted that the jurisdiction of the Court of Claims should not extend to any claim against the government "growing out of or dependent on any treaty stipulation entered into with foreign nations or with the Indian tribes." The Tucker Act of March 3, 1887, 24 Stat. 505, redefined and broadened the jurisdiction of

the Court of Claims, and repealed all inconsistent enactments. When the question arose whether section 9 of the act of 1863 was thereby repealed, the Supreme Court held that it was not. Eastern Extension Tel. Co. v. United States, 231 U.S. 326, 34 S.Ct. 57, 58 L.Ed. 250. Section 1 of the Tucker Act defined the jurisdiction of the Court of Claims, and section 2 first conferred jurisdiction upon the District Courts, declaring that they "shall have concurrent jurisdiction with the Court of Claims as to all matters named in the preceding section where the amount of the claim does not exceed one thousand dollars." Obviously, the jurisdiction of the District Courts was no broader than that of the Court of Claims; the exclusion of claims growing out of treaty stipulations was as applicable to the District Courts as to the Court of Claims. By the Act of March 3, 1911, 36 Stat. 1093, the jurisdiction of District Courts with respect to claims against the United States was carried forward into section 24(20) of the Judicial Code, as amended, 28 U.S.C.A. § 41(20). It was no longer convenient to define their jurisdiction by incorporating by reference section 1 of the Tucker Act of 1887; so the matters over which they should have jurisdiction were set forth in language identical with that used to define the jurisdiction of the Court of Claims in the Act of 1887, with a limitation as to the amount, and their jurisdiction was still characterized as "concurrent with the Court of Claims." 28 U.S.C.A. § 41(20). This change in form cannot be construed to have conferred upon the District Courts jurisdiction over a matter not conferred upon them by the act of 1887. It must still remain true that obligations of the United States directly resulting from a treaty cannot be determined either by the Court of Claims or by the District Court sitting as a court of claims. Accordingly, the motions to dismiss the actions at bar for lack of jurisdiction should have been granted. The judgments are reversed, with directions to dismiss on that ground. See Johnson v. Fleet Corporation, No. 56, 280 U.S. 320, 50 S.Ct. 118, 74 L.Ed. 451.