## WATSON et al. v. HOEY.

District Court, S. D. New York.
July 6, 1943.

Mitchell, Taylor, Capron & Marsh, of New York City (Charles Angulo, of New York City, of counsel), for plaintiffs.

Mathias F. Correa, U. S. Atty., of New York City (Frank J. Dufficy, Asst. U. S. Atty., of New York City, of counsel), for defendant.

LEIBELL, District Judge.

In this action plaintiffs seek to recover $287.65 and interest, the unrefunded part of the federal estate tax on the estate of William F. Houghton, deceased, which it is alleged was erroneously and illegally collected. Although the amount involved is small, the case presents several important questions of law. The facts have been stipulated and are as follows:

On January 8, 1936, William F. Houghton, a citizen and resident of the Irish Free State, died, and except for two small legacies to his executors in lieu of commissions, he willed the balance of his property to his wife and children, who were citizens and residents of. the Irish Free State or of Great Britain. Mr. Houghton's gross estate, both here and abroad, was $38,001.53, of which $12,517.66 represented the total gross estate situated in the United States. The Government in assessing the tax allowed total deductions of $1,080.44 from the gross estate wherever situated, of which amount $355.90 was allowed as a proportionate deduction from so much of the gross estate as was situated in the United States. § 303(b) (1) of the Revenue Act of 1926 as amended by the Revenue Act of 1934, C. 277, § 403(b), 48 Stat. 753, 26 U.S.C.A. Int.Rev.Acts, page 760. That left a net estate in the United States of $12,161.66.

The issue presented is whether the federal estate tax herein should have been computed as if Houghton had died a citizen of the United States; specifically, whether the Commissioner should have allowed the estate an exemption of $100,000 in computing the basic tax under the Revenue Act of 1926 and an exemption of $40,000 in computing the additional estate tax under Section 401(c) of the Revenue Act of 1932, as amended by Section 201 of the Revenue Act of 1935. C. 829 § 201(b), 49 Stat. 1022, 26 U.S.C.A. Int.Rev.Acts, page 805. The estate of an American citizen would have been entitled to these exemptions. If they had been allowed, no federal estate tax would have been payable on Houghton's estate. The determination of this question requires a consideration of the provisions of the Hay-Pauncefote Treaty of March 2, 1899, 31 Stat. 1939, and the sections of the Internal Revenue statutes relating to federal estate taxes on property of nonresident aliens, in effect at the time of the decedent's death.

## The Treaty

The Hay-Pauncefote Treaty of March 2, 1899, 31 Stat. 1939, contained two provisions, upon which plaintiff relies, as follows:

"Article II. The citizens or subjects of each of the Contracting Parties shall have full power to dispose of their personal property within the territories of the other, by testament, donation, or otherwise; and their heirs, legatees, and donees, being citizens or subjects of the other contracting party, whether resident or non-resident, shall succeed to their said personal property, and may take possession thereof either by themselves or by others acting for them, and dispose of the same at their pleasure, *paying such duties only as the citizens or subjects of the country where the property lies shall be liable to pay in like cases.*" (Italics by the Court.)

"Article V. In all that concerns the right of disposing of every kind of property, real or personal, citizens or subjects of each of the High Contracting Parties shall in the Dominions of the other enjoy the rights which are or may be accorded to the citizens or subjects of the most favored nation."

It is conceded that these provisions apply to a resident of the Irish Free State, at the time Houghton died in January of 1936.

In interpreting the phrase "paying such duties" (in Article II) plaintiffs refer to Article I of the Treaty and argue that the "duties" intended were the same as those stated in the concluding lines of Article I.

"Article I. Where, on the death of any person holding real property (or property not personal), within the territories of one of the Contracting Parties, such real property would, by the laws of the land, pass to a citizen or subject of the other, were he not disqualified by the laws of the country where such real property is situated, such citizen or subject shall be allowed a term of three years in which to sell the same, this term to be reasonably prolonged if circumstances render it necessary, and to withdraw the proceeds thereof, without restraint or interference, *and exempt from any succession, probate or administrative duties or charges other than those which may be imposed in like cases*

*upon the citizens or subjects of the country from which such proceeds may be drawn."* (Italics by the Court.)

In construing treaties "words are to be taken in their ordinary meaning 'as understood in the public law of nations'". Santovincenzo v. Egan, 284 U.S. 30, 52 S. Ct. 81, 84, 76 L.Ed. 151. Treaties should receive a liberal interpretation. Nielsen v. Johnson, 279 U.S. 47, 51, 49 S.Ct. 223, 73 L.Ed. 607; Bacardi Corporation v. Domenech, 311 U.S. 150, 61 S.Ct. 219, 85 L.Ed. 98. It seems to me that the "duties" referred to in Article II of the Treaty were intended to include Federal Estate taxes such as are here involved.

## The Statutes

Section 303(a) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 232, provided the manner in which, for the purpose of the tax, the value of the net estate should be determined *in the case of a resident.* Section 303(b) provided for a different method of calculating the taxable net estate in the case of a *nonresident.* A *resident's* gross estate (real estate situated abroad was not included) was allowed certain deductions under subdivisions (1), (2) and (3) of Section 303(a) and a specific "exemption of $100,000" by subdivision (4). The net taxable estate of a *nonresident* was determined "by deducting from the value of that part of his gross estate which at the time of his death is situated in the United States" a proportionate part of the deductions specified for residents in Section 303(a) (1), and by allowing with certain modifications the deductions specified for residents in Section 303(a) (2) and (3). But no mention was made in the various subdivisions of Section 303(b) of the Revenue Act of 1926 of any allowance to the estate of a nonresident of the specific exemption of $100,000 allowed the estate of a resident under subdivision (4) of Section 303(a) of that Act.

The Revenue Act of 1926 made a distinction between the estates of decedents who were residents and estates of decedents who were nonresidents. Nonresident aliens (persons not citizens owing allegiance to a foreign power) and nonresident citizens were jointly classed as nonresidents; resident aliens and resident citizens were jointly classed as residents.

By Section 401 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 573, there was imposed an "Additional Estate Tax", i. e., a tax in addition to the basic estate tax of Section 301 of the Revenue Act of 1926. The 1932 statute provided that in calculating the additional estate tax the method of valuation set forth in the 1926 Act, for the basic estate tax, was to be followed.

"§ 401. Imposition of Tax

\*      \*      \*      \*      \*

"(c) For the purposes of this section the value of the net estate shall be determined as provided in Title III of the Revenue Act of 1926, as amended, except that in lieu of the exemption of $100,000 provided in section 303(a) (4) of such Act, the exemption shall be $50,000."

(The exemption of $50,000 was reduced to $40,000 by the Revenue Act of 1935; August 30, 1935, C. 829, § 201(b), 49 Stat. 1022.)

Up to 1934 the estates of nonresident citizens and nonresidents not citizens were in the same category for Federal tax purposes and there could be no possible basis for the claim that there was any discrimination against the estate of a nonresident not a citizen.

By Section 403 of the Revenue Act of 1934 the distinction between citizens resident abroad and citizens resident in the United States, in respect to the basic estate tax under the Revenue Act of 1926 and the additional estate tax under the Revenue Act of 1932, was abolished and all citizens were put in the same class for Federal Estate tax purposes. That was eminently fair and its purpose was to prevent the evasion in part of Federal estate taxes by American citizens establishing a residence abroad and having that as the situs of most of their personal property. "This rule is similar to that applied in the imposition of the Federal Gift tax by Section 501 of the Revenue Act of 1932 [26 U.S. C.A. Int.Rev.Acts, page 580] and is analogous to that applying to the Federal income tax". Report of Ways & Means Committee on 1934 Internal Revenue Act.

Section 403 of the Revenue Act of 1934 is as follows:

"§ 403. Citizenship and Residence of Decedents

"(a) Section 303(a) of the Revenue Act of 1926, as amended, is amended by striking out 'In the case of a resident' and inserting in lieu thereof 'In the case of a citizen or resident of the United States'.

"(b) Section 303(b) of such Act, as amended, is amended by striking out 'In the case of a nonresident' and inserting in lieu thereof 'In the case of a nonresident not a citizen of the United States'.

"(c) Section 303(c) of such Act, as amended, is amended by striking out 'in the case of a nonresident' and inserting in lieu thereof 'in the case of a nonresident not a citizen of the United States'.

"(d) Section 303(d) and (e) of such Act, as amended, are amended by striking out the phrase 'nonresident decedent' wherever such phrase appears in such subdivisions and inserting in lieu thereof in each case 'nonresident not a citizen of the United States'.

"(e) Section 304(a) and (b) of such Act, as amended, are amended by striking out 'nonresident' wherever such word appears and inserting in lieu thereof in each case 'nonresident not a citizen of the United States'.

"(f) Section 403 of the Revenue Act of 1932 is amended by striking out 'resident decedent' and inserting in lieu thereof 'citizen or resident of the United States'."

When the estate of a citizen resident abroad became taxable on the same basis as the estates of citizens resident in the United States, the amount of the nonresident citizen's taxable estate (before deductions and exemptions) was increased by including therein the value of his personal property located abroad. At the same time, he became entitled to the more liberal deductions and exemptions which resident citizen's estates had theretofore been allowed, including the specific exemptions of $100,000 under the Act of 1926 and $50,000 under the Act of 1932.

■ In the case of nonresidents not citizens, the property of their estates, located abroad, is of course not taxed. As a result of the 1934 Revenue Act a nonresident citizen's estate tax now has a broader base than the estate of a nonresident not a citizen. Thus the estate of a nonresident not a citizen, with a large gross estate, the major part of which is located abroad (e. g., a gross estate of $1,000,000, of which only $100,000 is located in the United States), would pay a smaller Federal estate tax than a similar gross estate of a nonresident citizen with its properties similarly located. In the present case, because of its size and the proportionate location of its assets here and abroad, the estate of the nonresident not a citizen pays a small tax, although a similar estate of a nonresident citizen would pay none. But taking it by and large, the 1934 Revenue Act did not unfairly discriminate against the nonresident not a citizen. The exemption is only one of the elements entering into the calculation of the Federal estate tax on property of decedent citizens. It is reasonable to conclude that Congress did not consider the imposition of these estate taxes "as being inconsistent with the treaty stipulation". We should regard the action of Congress "as a practical construction of the treaty as permitting" these taxes on the properties of nonresidents not citizens, located in the United States. Pigeon River Improvement, Slide & Boom Co. v. Charles W. Cox Co., Limited, 291 U.S. 138, at page 160, 54 S.Ct. 361, 78 L.Ed. 695.

In all the amendments to Section 303 of the Revenue Act of 1926 made by the Revenue Acts of 1928, 1932 and 1934 the specific lump sum exemption granted under Section 303(a) (4) was never extended to the estates of nonresidents not citizens. (See pages 232 to 241 of the volume containing the Internal Revenue Acts of 1924 to date, Title 26 U.S.C.A.) The same is true of the additional estate tax imposed by the Revenue Act of 1932. The statutes thus clearly and unequivocally expressed the intention of Congress to deny to the estate of a nonresident not a citizen the lump sum specific exemptions of the Acts of 1926 and 1932, as amended.

■ The Revenue Acts of 1926 and later years would control, if we assume, arguendo, that they are in conflict with the Treaty of 1899. "If there were any legislative violation of the treaties by the enactment of the statute, that enactment being subsequent to the treaties would prevail over them in establishing the law for the courts of this country". George E. Warren Corporation v. United States, 2 Cir., 94 F. 2d 597, at page 599. See, also, Pigeon River Improvement, Slide & Boom Co. v. Charles W. Cox Co., Limited, supra.

The complaint will be dismissed on the merits. I am filing findings of fact and conclusions of law as required by Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.